Filed 8/10/26  P. v. Tramontini CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DANIEL TRAMONTINI,<br><br>     Defendant and Appellant. | C103235<br><br>(Super. Ct. No. 23FE005203) |

In November 2024, a jury found defendant Daniel Tramontini guilty of attempting to take a vehicle worth more than $950 without the owner's consent.  (Pen. Code, § 664; Veh. Code, § 10851, subd. (a).)[1]  Defendant waived jury trial on prior strike and aggravating factor allegations.  The trial court found a prior strike true (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and also found true aggravating factors that defendant's prior convictions were numerous or of increasing seriousness and defendant served a prior prison term (Cal. Rules of Court, rule 4.421(b)(2), (3)).  The court sentenced defendant to state prison for the upper term of one year six months, doubled by the strike to three years.

---

[1]  Undesignated statutory references are to the Vehicle Code.

1

On appeal, defendant contends: (1) the trial court prejudicially erred by failing to instruct the jury with definition of an owner of a vehicle in section 460; (2) the evidence was insufficient to establish who owned the truck and therefore insufficient to prove defendant did not have the owner's consent to take the truck; and (3) the case should be remanded for a hearing on defendant's ability to pay ancillary fees. We will affirm the judgment.

## I. BACKGROUND

In 2017, R.K. received a 2004 pickup truck from J.B. For three years, R.K. lived in a trailer on a ranch owned by J.B. and took care of the property. When J.B. sold the ranch, he gave R.K. the truck and a tractor as compensation. R.K. had problems registering the truck with the Department of Motor Vehicles (DMV), because it was registered in the name of J.B.'s corporation, 4K Investments, and J.B. had signed the pink slip incorrectly. J.B. was 96 years old and not well enough to go to the DMV to correct the error. R.K. had a bill of sale for the truck and emails with J.B., which R.K. used to obtain a surety bond to insure his title to the truck.

On April 10, 2023, R.K. had parked the truck with an attached trailer on the street by his house in Rancho Cordova. Some days before, he noticed a sticker on the truck requiring it to be moved by a certain date. R.K. called a code enforcement officer and received an extension of time to move the truck and trailer.

On April 10, 2023, M.A. received a call to his towing service from defendant who wanted a vehicle in Rancho Cordova towed to a nearby apartment complex. M.A. and his brother went to where the vehicle was located and met defendant. When M.A. asked defendant for the key to the truck, he claimed he owned the truck but had lost the key. Because it was an all-wheel drive vehicle, M.A. needed to get inside the truck to shift it into neutral to load it on the tow truck. Defendant tried unsuccessfully to use a long metal object to pry open the door of the truck. Then defendant agreed to pay an extra $50 to M.A. to perform "lock-out service." When the door was opened, defendant jammed a

2

screwdriver in the ignition to try to shift the truck into neutral. M.A. warned defendant he might break the ignition. Defendant went home to get his keys and wallet.

When M.A. and his brother were trying to put the truck in neutral, R.K. came out and asked what they were doing. R.K. said the truck belonged to him and showed them the key. R.K. noticed that the ignition on the steering column had been "punched out." R.K. asked M.A. to call defendant. When defendant arrived, R.K. accused him of trying to steal the truck. Defendant claimed ownership of the truck. R.K. said he had called the police. Officers arrived and detained defendant. An officer asked R.K. for the vehicle registration, and he showed the officer emails with J.B.

At trial, defendant testified he had spotted the truck with a red tag on it two days before he called the tow truck company. Tagged vehicles are towed within 72 hours, and it was getting close to that time. Defendant planned for a tow truck company to tow it to their lot, and 30 days later, if no one claimed it, he would have a chance to buy it at auction. Defendant spoke to M.A. on the phone but only spoke to his brother at the scene. Defendant did not tell M.A.'s brother to tow the truck to an address of an apartment complex. Defendant informed him that there were two tagged vehicles at that location that could be towed. Defendant never said he was the owner of the truck. Defendant tried to pry the door open, but his metal tool did not fit, and, in the meantime, M.A.'s brother had opened the door with a Slim Jim. Defendant denied entering the cab of the truck and denied sticking a screwdriver in the ignition.

## II. DISCUSSION

A. *Defendant's Conviction for Attempted Taking a Vehicle Without the Owner's Consent*

Defendant raises two challenges to his conviction for attempted taking a vehicle without the owner's consent. (Pen. Code, § 664; § 10851, subd. (a).) Section 10851, subdivision (a) provides in relevant part: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent to either

3

permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without the intent to steal the vehicle, … is guilty of a public offense."  A violation of the statute is a " 'wobbler' " offense, punishable as either a misdemeanor or a felony.  (*People v. Jackson* (2018) 26 Cal.App.5th 371, 377.)

### 1. Jury Instruction

At hearings on jury instructions, defense counsel suggested that the trial court draft a pinpoint instruction quoting the definition of "owner" of a vehicle in section 460 to add to CALCRIM No. 1820, the standard instruction on the elements of a section 10851 charge.  (*People v. Speck* (2022) 74 Cal.App.5th 784, 792.)

Section 460 provides:  "An 'owner' is a person having all the incidents of ownership, including the legal title of a vehicle whether or not such person lends, rents, or creates a security interest in the vehicle; the person entitled to the possession of a vehicle as the purchaser under a security agreement; or the State, or any county, city, district, or political subdivision of the State, or the United States, when entitled to the possession and use of a vehicle under a lease, lease-sale, or rental-purchase agreement for a period of 30 consecutive days or more."

The prosecution proposed a special instruction on ownership based on case law that an owner for purposes of section 10851 did not have to be the registered owner of the vehicle or prove strict compliance with Vehicle Code transfer procedures.  Defense counsel responded that section 460 should be included in the instruction "in its entirety" and argued the case law relied on by the prosecution was factually distinguishable.  The trial court observed that section 460 "seems to be a general statement of the law.  Those are generally things that you would see that help define ownership, but I don't think it is an exhaustive list."  Ultimately, the court rejected the defense's request for a "bald statement" of section 460, which the court said, "in the context of this case, is misleading, and it's also confusing on ownership issues."  Instead, the court determined that it would

4

add a pinpoint instruction to CALCRIM No. 1820 stating, " 'The absence of a valid registration of a vehicle does not, in and of itself, prove a lack of ownership.' "

The trial court instructed the jury with CALCRIM No. 1820 with the court's additional language as follows: "Unlawful taking of a vehicle is a violation of … [s]ection 10851[, subdivision ](a). To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant took someone else's vehicle without the owner's consent; two, when the defendant took the vehicle, he intended to deprive the owner of possession or ownership of the vehicle for any period of time; and three, the vehicle was worth more than $950. [¶] A taking requires that the vehicle be moved for any distance, no matter how small. [¶] The absence of a valid registration of a vehicle does not, in and of itself, prove lack of ownership."

Defendant contends the trial court erred by telling the jury the absence of valid registration, in and of itself, did not prove lack of ownership while failing to tell the jury what did constitute ownership. Defendant argues the court's instruction "misdirected the jury and relieved the prosecution of its burden to prove lack of the owner's consent." Defendant maintains that, if not misled by the trial court's instruction, a rational juror would have acquitted him when provided with an instruction defining ownership as set forth in section 460. We are not persuaded.

"We review the trial court's refusal to give a requested instruction de novo." (*People v. Speck, supra*, 74 Cal.App.5th at p. 791.)

We find no error in the trial court's refusal to incorporate section 460 into CALCRIM No. 1820. To begin with, section 460 would have misled and confused the jury that ownership was limited to the circumstances set forth in that statute. Section 460's definitions of ownership, however, are not exclusive. In *People v. Clifton* (1985) 171 Cal.App.3d 195 (*Clifton*), the appellate court rejected the defendant's contention that the victim was not the owner within the meaning of section 460, therefore the People failed to establish an essential element of a section 10851 charge. (*Clifton, supra*, at pp.

5

200-201.) The court said: "The definition of an owner found in the Vehicle Code does not apply under all circumstances and one may be considered to be an owner of a car though he has not transferred the title in the manner required by the Vehicle Code." (*Id.* at p. 200; see also *Allstate Ins. Co. v. Chinn* (1969) 271 Cal.App.2d 274, 278 ["Section 460 … does not provide the exclusive definition of 'ownership' to be used in construing insurance policies"]; *Kaley v. Catalina Yachts* (1986) 187 Cal.App.3d 1187, 1198 [the law does not require all incidents of ownership in section 460 be proven to establish ownership].) Moreover, none of the three definitions of ownership in section 460—(1) a person with all incidents of ownership, including legal title; (2) a person entitled to possession as the purchaser under a security agreement; or (3) a public entity entitled to use and possession of a vehicle—were pertinent to the circumstances of this case.

Nor was it necessary for the trial court to provide a specific definition of ownership. As the People point out, the jury was instructed with CALCRIM No. 200: "Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings." The scope of the definition of "owner" in section 460 is not coextensive with the ordinary meaning of that word. (Cf. *Fountain v. Bank of America Nat'l Trust & Savings Assn.* (1952) 109 Cal.App.2d 90, 95.)

Finally, the pinpoint instruction crafted by the trial court addressed the issue raised by the evidence, i.e., whether R.K. was the owner of the truck, even though he had been unable to register it. On that issue, the court's instruction was legally correct. "The records of the DMV do not necessarily and conclusively establish the true ownership of a vehicle." (*Clifton, supra,* 171 Cal.App.3d at p. 200; see *Liberty Mut. Fire Ins. Co. v. McKenzie* (2001) 88 Cal.App.4th 681, 687 ["Case law makes clear that DMV records are not conclusive on the issue of ownership"]; see also *Hoffman v. Connell* (1999) 73 Cal.App.4th 1194, 1200 ["There are several indicia of ownership. Title is one. [Citation.] Possession is another"]; Evid. Code, § 637 ["The things which a person possesses are presumed to be owned by him"].) As the trial court instructed the jury, the

6

fact that R.K. was not the registered owner of the vehicle at the time of the attempted theft does not undermine his uncontradicted assertion of ownership. (*Clifton, supra*, at p. 201.)

We conclude there was no instructional error.

2.      *Sufficiency of the Evidence*

Defendant also contends that his conviction for attempted vehicle theft should be reversed because it was not supported by sufficient evidence. Defendant argues the evidence did not establish who owned the truck, and therefore, the prosecution could not prove defendant attempted to take the truck without the owner's consent.

"In reviewing a challenge to the sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution and/or the due process clause of article I, section 15 of the California Constitution, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212.) We determine independently "whether the evidence is sufficient under the federal and state constitutional due process clauses." (*Id.* at p. 1213.)

"A violation of … section [10851, subdivision (a)] requires proof of a specific intent to deprive the owner of the car of possession or title for either a temporary or permanent period. [Citation.] The language of the statute places the burden on the People to show by direct or circumstantial evidence the defendant lacked the consent of the owner." (*Clifton, supra*, 171 Cal.App.3d at p. 199.)

Defendant asserts that the evidence was insufficient to prove that R.K. owned the truck because it was still registered to 4K Investments, which created a presumption that 4K Investments was the legal owner that was not rebutted at trial by admissible evidence. Defendant discounts R.K.'s testimony that emails showed J.B. gave the truck to him

7

because the emails were not entered into evidence, and similarly faults the prosecution for not producing the surety bond R.K. described insuring his title to the truck.

Defendant cites *Caccamo v. Swanston* (1949) 94 Cal.App.2d 957 for the proposition that vehicle registration creates a presumption of ownership. In *Clifton*, the appellate court also cited *Caccamo* for the principle that "[a] certificate of ownership is evidence of title, although not conclusive on the subject." (*Clifton, supra*, 171 Cal.App.3d at p. 200.) The court then rejected the defendant's argument that the People failed to establish the theft victim was the owner of the vehicle because it was not registered in his name, his name was not on the pink slip, and he had not submitted a notice of transfer to the DMV. (*Ibid.*) The theft victim testified he owned the vehicle, had purchased it from the previous owner, received a pink slip, and "the vehicle had been in his sole possession from the date of purchase to the time of the unlawful taking." (*Id.* at p. 201.) The *Clifton* court said this "uncontroverted testimony, without more, is sufficient to support an implied finding of ownership" of the vehicle. (*Ibid.*) The court concluded the fact the theft victim was not the registered owner and had not transferred the vehicle in compliance with the Vehicle Code did not "fatally undermine his otherwise uncontradicted assertion of ownership." (*Ibid.*)

Here, R.K. testified he received the truck from J.B. in 2017 as partial compensation for taking care of his ranch, and by 2023 R.K. had had the truck for six years. R.K. had not been able to register the truck because J.B. had filled out the pink slip incorrectly and due to his advanced age and poor health could not visit the DMV to correct the error, but R.K. had emails with J.B. showing the gift and surety bond protecting R.K.'s title. Defendant deems R.K.'s testimony "uncorroborated and implausible." Nonetheless, as in *Clifton*, R.K.'s testimony "as to ownership, possession, and exclusive dominion and control of the vehicle is uncontroverted." (*Clifton, supra*, 171 Cal.App.3d at p. 201.) While defendant testified on his behalf, he offered no evidence contradicting R.K.'s testimony that J.B. gave him the truck and R.K. alone

8

possessed it at the time of the attempted theft. R.K.'s testimony standing alone was sufficient to prove ownership and lack of consent to defendant's attempt to take the truck. (*Ibid.*)

B.      *Ancillary Fees*

At sentencing, the trial court ordered defendant to pay a $40 court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)) and a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)). As defendant acknowledges, he did not claim he was unable to pay these assessments or otherwise object to the assessments on any basis.

On appeal, defendant contends that, in order to conform to equal protection principles, this case should be remanded for a hearing on his ability to pay the ancillary assessments. We conclude defendant forfeited any challenge to these assessments on appeal.

Penal Code section 1465.8, subdivision (a)(1) provides: "To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense." Government Code section 70373, subdivision (a)(1) provides: "To ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense …. The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony." Both of these costs are mandatory. (*People v. Kopp* (2025) 19 Cal.5th 1, 15 (*Kopp*).)

In *Kopp*, our Supreme Court held that a trial court must "upon request" consider a defendant's inability to pay before imposing either a court operations assessment or court facilities assessment. (*Kopp, supra*, 19 Cal.5th at p. 9; *id.* at p. 31.) Our high court explained that imposition of these assessments without giving criminal defendants the opportunity to demonstrate inability to pay violates their right of equal protection under the law since indigent civil litigants are given that opportunity. (*Id.* at p. 30.)

"In general, a defendant who fails to object to the imposition of fines and fees at sentencing forfeits the right to challenge those fines and fees on appeal." (*People v.*

9

*Ramirez* (2023) 98 Cal.App.5th 175, 224.)  Here, defendant did not challenge the imposition of the assessments on any basis, and therefore he has forfeited any argument on appeal regarding his inability to pay them.  (*People v. Wilson* (2023) 14 Cal.5th 839, 867.)

Defendant argues that issue was not forfeited because his sentencing in February 2025 predated the *Kopp* decision issued in December 2025.  Defendant argues "[t]he pertinent law changed since sentencing, and any objection to the imposition of ancillary fees would have been futile given the state of the law at sentencing."

We disagree.  Both *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164-1169, disapproved in part in *Kopp, supra*, 19 Cal.5th at p. 23, fn. 17, and *People v. Son* (2020) 49 Cal.App.5th 565, 590-591, which agreed with *Dueñas*, would have alerted defendant to these issues years before his sentencing.  Defendant had the benefit of these earlier decisions, which recognized his right to object to the imposition of assessments on the ground of inability to pay.  We conclude defendant has forfeited a claim to a hearing on his ability to pay court operations and court facilities assessments by failing to raise the issue in the trial court.

## III.   DISPOSITION

The judgment is affirmed.

/S/
RENNER, Acting P. J.

We concur:

/S/
KRAUSE, J.

/S/
FEINBERG, J.

11